# United States Bankruptcy Court
## for the District of Oregon

**Frank R. Alley, III, Judge**
Barbara D. Ivey, Judicial Assistant
Lee D. Brice, Law Clerk



151 West Seventh Ave., Suite 300
Post Office Box 1335
Eugene, Oregon 97440
(541) 465-6767
FAX: (541) 465-6898

October 6, 2005

Mr. Lann Leslie
P.O. Box 10747
Eugene, OR 97440

Mr. Sam Houston
96 E. Broadway #7
Eugene, OR 97401

RE: Ogden v. Ogden 04-6339-fra

Dear Counsel:

This letter is to announce my ruling regarding motions for summary judgment filed by Defendants and de facto plaintiffs Robert and Gloria Jakobitz. For the reasons that follow, both motions will be denied.

### BACKGROUND

Plaintiffs / Debtors, Richard and Joyce Ogden, filed a complaint seeking an order to determine the validity of certain transfers against Defendants Rulon and Anna Ogden, parents of Debtor Richard Ogden, and for recovery of any such transfers found to be fraudulent. A "Stipulation for Litigation of Claims in Adversary Proceeding" was thereafter entered into between Plaintiffs, Defendants, and Robert and Gloria Jakobitz by which the parties agreed that the Jakobitzes would use this adversary proceeding to prosecute their 14th claim in an action which was initially brought in the U.S. District Court for the District of Oregon and was stayed with the bankruptcy filing of the Plaintiffs. In effect, the Jakobitzes became the de facto plaintiffs in this adversary proceeding. Defendants and the Jakobitzes have filed motions for summary judgment.

### THE JACOBITZES' CLAIM

The Jakobitzes claim alleges that the Debtors, as trustees of the Richard and Joyce Ogden Family Trust, made two transfers to Defendants, as trustees of the S.O. Trust: (1) On 9/30/00 a trust deed was executed with respect to "Parcel 2" of certain real property, and (2) On 10/2/00, a warranty deed was executed with respect to "Parcel 3" of that same property. Further, that:

– The transfers were not made for reasonably equivalent value;
– The transfers were made to an insider, with actual intent to hinder, delay and

defraud the Jakobitzes; and
– The trustees of the SO Trust accepted the conveyances with knowledge of the fraudulent intent of the transfer.

The complaint also states that the transfers described above were made after the Debtors, through the Richard and Joyce Ogden Family Trust and as owners of ECI (a business sold to Debtors by the Jakobitzes), became indebted to the Jakobitzes, and after commencement of legal action by the Jakobitzes.

Sufficient allegations were made in the Complaint to allege recovery under both ORS 95.230 and 95.240.

ORS 95.230(1) provides that a transfer is fraudulent as to present or future creditors if the transfer was made

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due.

ORS 95.240 provides that a transfer is fraudulent as to present creditors where:

(1) . . . the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation, or

(2) . . .  the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

ORS 95.270 (1) provides that "A transfer or obligation is not avoidable under ORS 95.230(1)(a) as against a person who took in good faith and for a reasonably equivalent value."

<u>SUMMARY JUDGMENT</u>

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326-27 (1986).

<u>Defendants' Concise Statement of Facts</u>

– Debtors acquired land in Selma, Ore. in Sept 1998 and partitioned it into three parcels in 1999.

– On 10/2/00, Debtors, as trustees of the Richard and Joyce Ogden Family Trust, conveyed by warranty deed Parcel 3 to Defendants, as trustees of the S.O. Trust. Consideration for the transfer were antecedent debts owing by Debtors to Defendants:

    1. Two promissory notes with debtor Richard Ogden as maker in favor of Edward and Rose Ogden, totaling $25,000, dated 6/24/88 and 8/2/89. Edward and Rose were grandparents of debtor Richard and the parents of defendant Rulon. The 1988 note was assigned to Defendants in 1991 and the 1989 note was assigned to Defendants in 1992.

    2. A $20,000 loan from Defendants to Debtors for the purchase of a home by Debtors in California in 1987.

    3. A $2,500 loan from Defendants in 1989 for improvements to the California home.

    4. A $1,750 loan from Defendants to Debtors for the payment of a credit card balance in 1993.

    5. A $4,893 balance on a loan originally made by Anna Odgen's mother, Annie Farnsworth, in May 1991 and assigned to Defendants in November 1991 as part of the distribution of Annie Farnsworth's estate.

– On 10/2/00, Debtors, as trustees of the Richard and Joyce Ogden Family Trust conveyed a security interest to the Defendants via a trust deed in Parcel 2 to secure an antecedent loan in the amount of $18,631 for the partition and development of the real property.

– At the time of the 10/2/00 transfers, Defendants did not know of the existence of the Debtors' indebtedness to the Jakobitzes, nor were Defendants aware of any specific financial difficulties that Debtors were having.

### Jakobitzes' Concise Statement of Facts

– The Richard and Joyce Ogden Family Trust (Ogden Family Trust) was created 11/6/97 and the SO Trust was created on 6/14/00. The Declaration of Trust for both trusts indicates that neither trust could accept debts for no consideration.

– The Ogden Family Trust had no legal obligations to the SO Trust or to Rulon and Anna Ogden for the personal debts of debtor Richard Ogden.

– The Jakobitzes filed a lawsuit 1/6/00 in Lane Co. Circuit Court against the business entity that the Jakobitzes sold to Debtors (ECI Communications). The second lawsuit was filed 2/7/00 against Debtors individually and one of their trust entities.

– Debtors have retained possession of the real property transferred on 10/2/00.

– Richard Ogden was made a beneficiary of the SO Trust on 6/15/00 and a trustee in the latter part of 2001.

– Debtor created, participated in, worked for, or was otherwise associated with 12 family trusts or LLC's.

– Debtors put up improvements on the transferred property without permission of the SO Trust trustees.

– Richard Ogden started discussing the creation of the SO Trust and the transfers to the SO Trust between October and December 1999.

### Defendants' Supplemental Concise Statement of Facts

– Nothing in the Declaration of Trust for either trust that prevented Richard Ogden from assigning his indebtedness to his parents to the Ogden Family Trust. Richard Ogden assigned the indebtedness to the Ogden Family Trust on 11/7/97.

– Debtors are in possession of Parcel 3 as mere tenants and paid rents on Parcel 3 to Defendants in the amount of $8,250 for each of the calendar years 2000 and 2001.

– Richard Ogden became one of the co-trustees of the SO Trust only temporarily for the purpose of obtaining a building permit on behalf of the SO Trust since he could be physically present at the planning office. At all material times, Defendants remained majority co-trustees and maintained control over the trust property. Defendants' purpose for the beneficiary designation of Richard Ogden was to create a contingent remainder interest in the SO Trust . Contingent remainder beneficiaries were also created for Defendants' other descendants.

– Defendants admit that ECI was insolvent and stopped making payments to the Defendants in December 1999.

– Parcel 3 had a reasonable market value of between $40,000 and $45,000 at the time of the transfer in October 2000.

– The transfer of Parcel 3 was contemplated by Defendants and Debtors in 1999, before the Jakobitzes filed any lawsuit against Debtors or any of the Debtors' affiliated entities.  Rent was being paid by Debtors to Defendants for Parcel 3 beginning in January 2000, even though the transfer did not close until October 2000.

– Defendants advancement of $18,631 to Debtors for the partition and development of Parcels 1, 2, and 3 was intended to be a loan and the deed of trust against Parcel 2 was intended to be collateral for that loan.

– At the time of the transfers, Defendants were aware that Richard Ogden's business was involved in a lawsuit, but were not aware about the Jakobitzes' claims specifically and had no specific knowledge about the Debtors' financial condition.

DISCUSSION

In the absence of direct evidence of fraudulent intent, the court must look at so-called "badges of fraud" which indicate the presence or absence of intent to defraud.  ORS 95.230(2) lists a number of noninclusive factors the court is to consider in making that determination, several of which are present in this case.  "ORS 95.230(2) contains no suggestion that certain factors carry more weight than others or that the presence of several factors should shift the burden of proof to the defendant[s]."  Doughty v. Birkholtz et al., 156 Or.App. 89, 97, 964 P.2d 1108, 1113 (1998).  "The test is not whether there is any inference of fraudulent intent, however weak, but whether there is a sufficient inference to create a 'triable issue' . . . ."  Doughty at 98 and 1113, n. 6.

As stated above, there are several badges of fraud present in this case, including: (1) the transfers were made to insiders, (2) the Debtors retained possession or control of the property after the transfers, and (3) the transfers were made after the Debtors had been sued.  In addition, there are several other suspicious circumstances surrounding the transfer:  (1) consideration for the transfers consisted of antecedent debts, (2) the transfers were initiated by Debtor Richard Ogden, (3) the transfers were made to and from grantor trusts of the parties, and (4) defendant Rulon Ogden was aware at least generally of debtor Richard Ogden's poor financial condition and of lawsuits being filed against him. From these facts, one can infer that the transfers were made with the intent to "hinder, delay, or defraud" a creditor of the Debtors.

On the other hand, Defendants have rebutted the claim of the Jakobitzes' through various documentary and deposition sources to refute the inference of fraud and to establish that Defendants took in good faith.  For example, Defendants provided:  copies of cancelled checks showing funds provided to Debtors and copies of notes and agreements pertaining to the funds, a written agreement from December 1999 concerning rent to be paid by Debtors to Defendants for

the use of the transferred property and terms for an option to repurchase the property, and documentary evidence of the value of the real property transferred.

As the court determined in <u>Doughty</u>, "A factfinder would [thus] be free to look at those countervailing affidavits and determine, on balance, what inference to draw. Necessarily, then, there is a material issue of fact for a jury's determination, one that defeats summary judgment for either party." <u>Doughty</u> at 98-99 and 1114.

<u>CONCLUSION</u>

When the facts submitted with the motions for summary judgment are viewed in the light most favorable to the opposing party, there remain material facts which must be determined in the context of a trial. Accordingly, the motions for summary judgment filed by Defendants and by the Jakobitzes will be denied. This letter opinion constitutes my findings of fact and conclusions of law, which will not be separately stated. An order consistent with this letter opinion will be entered.

Very truly yours,

FRANK R. ALLEY, III
Bankruptcy Judge